**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

**ZELTIQ AESTHETICS, INC.,**

    Plaintiff,

    v.                                    Case No. 13-C-575

**BROWN HEALTH RELAXATION
STATION LLC, NOUVELLE
WEIGHT LOSS CENTERS, and
MEREDITH BROWN,**

    Defendants.

## DECISION AND ORDER

In our society, the quest for an "ideal" physique is a continuing pursuit. The focus of this action is a device and non-invasive procedure for strategically reducing fat bulges by freezing fat cells without damage to the skin.

Plaintiff Zeltiq Aesthetics, Inc.'s ("Zeltiq"), a medical device company, is the exclusive owner or licensee of the technology underlying the process known as Cryolipolysis® — a patented and clinically proven procedure. Zeltiq filed this action against Brown Health Relaxation Station LLC ("Relaxation"), Nouvelle Weight Loss Centers ("Nouvelle"), and Meredith Brown ("Brown") (collectively the "Defendants") claiming trademark infringement, false advertising, false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, arising from the Defendants' conduct with an infringing device and procedure.

The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C.

§§ 1331 and 1338. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b).

On August 1, 2013, this Court granted Zeltiq's motion for default judgment finding that the Defendants are jointly and severally liable to Zeltiq for (1) willful federal trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (2) false advertising and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); and (3) infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). (ECF No. 16.) However, the Court found Zeltiq had not established that a permanent injunction should issue, deferred the request for attorney fees and costs for later determination, and set a date for an evidentiary hearing.

Subsequently, Zeltiq filed a motion, accompanied by affidavits and documentary evidence, requesting that in lieu of live testimony the Court consider those accompanying documents as establishing the basis for the requested injunction. (ECF No. 17.) The motion was granted. (ECF No. 24.)

This Decision and Order addresses Zeltiq's request for default judgment granting permanent injunctive relief, an award of attorney fees and costs, and prejudgment and post-judgment interest. Having considered the affidavits and other evidence on file, the Court finds that Zeltiq has submitted sufficient documentary evidence to support its requests for relief so that, with the exception of calculating the amount of pre-judgment interest on the attorney fee award, the outstanding issues may be resolved. *See Dexia Credit Local v. Rogan,* 602 F.3d 879, 884 (7th Cir. 2010)

(holding that a court need not conduct an evidentiary hearing on an injunction unless one is necessary because of an issue of fact created by response). Accordingly, the Court enters the following findings of fact, conclusions of law in support of the entry of the permanent injunction, and an award of attorney fees and costs, and pre-judgment interest on the attorney fees. However, as will be further explained, entry of final judgment will await Zeltiq's filing of its calculation of the proper amount of prejudgment interest.

**FINDINGS OF FACT**

Zeltiq is a medical technology company that owns and/or is the exclusive licensee of the technology for Cryolipolysis®, a non-invasive, patented, clinically proven procedure involving freezing fat cells without damage to the skin. Zeltiq markets the device and procedure under two registered trademarks: Zeltiq® and CoolSculpting®.

Zeltiq's CoolSculpting® device and procedure have been cleared by the United States Food and Drug Administration ("FDA") for the provision of Cryolipolysis® services to the flank and abdomen. Zeltiq is the only entity in the United States that has obtained FDA clearance to offer such a device and procedure. Zeltiq markets its device and licenses its intellectual property to licensed physician providers who offer cosmetic medical procedures. The cost of an authentic CoolSculpting® device is about $95,000 and licensed medical providers generally charge more than $1,000 for a single session.

Zeltiq's CoolSculpting® procedure has grown in popularity, and that growth has brought an increasing proliferation of knock-off devices available for sale via the internet. Zeltiq has confirmed that most of those knock-off devices infringe the patents owned by or exclusively licensed to Zeltiq.

The Defendants operate facilities that offer spa services such as massages, waxing, and facials, and weight loss services such as dietary pharmaceuticals and weight loss counseling, which they advertise through web sites located at http://www.relaxation-station.com and http://www.nouvellediet.com. (Compl. ¶ 21.) (ECF No. 1.) Relaxation, Nouvelle, and Brown have advertised, marketed, and sold treatments under the confusingly similar designation "Freeze Sculpting," which they have promoted by claiming and/or suggesting is the same as or functionally equivalent to Zeltiq's CoolSculpting® Cryolipolysis® device and treatment. The Defendants' "Freeze Sculpting" device and treatments are not affiliated with, sponsored by, or approved of by Zeltiq, nor are their device and services the equivalent of Zeltiq's patented, FDA approved, clinically proven CoolSculpting® Cryolipolysis® treatments.

In November 2012, and April 2013, Zeltiq communicated with the Defendants in an attempt to persuade them to cease their conduct without resort to legal action. (Aff. Support Inj. ¶¶ 15, 17, 19-20.) (ECF No. 18.) Consumer confusion has occurred among members of the public who are confused, mistaken, or believe that the purported "Freeze Sculpting" services offered by the Defendants are the same as or are

affiliated with, approved of, or sponsored by Zeltiq. (*See id.* at ¶¶ 13-14, 18.) Zeltiq filed this action on May 23, 2013, after its attempts to informally resolve the issues were unsuccessful.

Wisconsin Circuit Court Records disclose unsatisfied judgments against Brown and her affiliated companies, and Brown personally. (*See id.* at ¶ 24, Ex. O.) (ECF No. 18-15.) In 2011, a bankruptcy action filed in this District by Brown was dismissed based on that court's finding that she had engaged in "a scheme" to delay or hinder a creditor involved in an eviction proceeding. (*See id.* at ¶ 25, Ex. P.) (ECF No. 18-16.)

## CONCLUSIONS OF LAW

The Lanham Act specifically provides for the granting of injunctive relief, stating that a district court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S .C. § 1116(a). An injunction may issue only upon a showing that: (1) the plaintiff has suffered irreparable harm; (2) monetary damages are inadequate to remedy the injury; (3) an equitable remedy is warranted based on the balance of hardships between the plaintiff and defendants; and (4) the public interest would be well served by the injunction. *See eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006); *Kartman v. State Farm Mut. Auto. Ins. Co.,* 634 F.3d 883, 892 (7th Cir. 2011) (citing *eBay,* 547 U.S. at 391; Dan B. Dobbs, *Dobbs*

*Law of Remedies* § 2.9 (2d ed. 1993)).

The third part of the test — the balance of hardships — takes on heightened importance when the plaintiff requests a "mandatory injunction," that is, an injunction requiring the defendant to perform an affirmative act. *Kartman*, 634 F.3d at 892 (citing Dobbs, *supra* § 2.9). A mandatory injunction imposes significant burdens on a defendant and requires careful consideration of the intrusiveness of the ordered act, as well as the difficulties that may be encountered in supervising the enjoined party's compliance with the court's order. *Id*.

### *Irreparable Harm*

To show irreparable harm, Zeltiq must establish that any injuries or losses it will suffer from the denial of an order enjoining the Defendants from marketing, promoting, or selling the Freeze Sculpting device and treatment cannot be compensated in money damages. The court of appeals for this circuit has stated "it is well settled that injuries arising from Lanham Act violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002).[1] While that presumption may no longer be valid, the difficulty in assessing the damages associated with the

---

[1] The Supreme Court's subsequent decision in *eBay Inc.,* 547 U.S. at 392-93, made clear that there is no such presumption for patent infringement. *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012) held that, although *eBay* was a case about patents rather than copyrights and about permanent rather than preliminary injunctions, it was persuaded by *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.,* 654 F.3d 989, 995–96, 998 (9th Cir. 2011), and *Salinger v. Colting,* 607 F.3d 68, 82 (2d Cir. 2010), that *eBay* governs a motion for a preliminary injunction in a copyright case, as well. 689 F.3d at 755 (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22-24, 129 S.Ct. 365 (2008)).

harm to Zeltiq's reputation and loss of goodwill supports a finding that Zeltiq has sustained irreparable harm. *See id.*

*Inadequate Legal Remedies*

Legal remedies are inadequate because monetary damages are impossible to quantify and inadequate to compensate Zeltiq for the damage to its reputation and goodwill associated with its intellectual property as a consequence of the Defendants' ongoing illegal actions. In addition, based on court records[2] showing multiple unsatisfied judgments against Brown and affiliated companies, it is unlikely that any monetary judgment entered against the Defendants will be satisfied.

*Balance of Hardships*

The "balance of hardships" assesses the relative effect of granting or denying an injunction on the parties. *eBay,* 547 U.S. at 391. Here, the requested injunctive relief will not create an undue hardship for the Defendants because their facilities offer numerous other services that would not be covered under the scope of the requested injunction. Without injunctive relief, Zeltiq has sustained and will continue to sustain diminution in value of its intellectual property and reputation as the exclusive licensee of the underlying technology and the only party to be cleared by the FDA for the procedure. Zeltiq will also be injured because it cannot exercise quality

---

[2] Rule 201 of the Federal Rules of Evidence allows the Court to take judicial notice of documents in the public record. *See Virnich v. Vorwald,* 664 F.3d 206, 209 (7th Cir. 2011).

control over the Defendants' treatments.  The balance of hardships favors Zeltiq.

*Public Interest*

The "public interest" includes any effects that granting or denying the injunction would have on nonparties.  The public interest is supported by granting the injunction because it will protect patients who erroneously believe they are receiving a treatment from a patented medical device that has been clinically proven and FDA approved, which is false with respect to the product and treatment offered by the Defendants.  Injunctive relief is also in the public interest because the public may be physically injured by the performance of services using a medical device which has not been subject to any regulatory oversight.

Physicians who purchase Zeltiq's CoolSculpting® Cryolipolysis® and properly offer the associated medical services will also be protected from the Defendants' improper underselling of a similar but non-patented, non-FDA approved product which has not undergone clinical testing.  Granting the injunction also furthers the purposes of federal trademark law and, to that extent, fulfills the public interest.  The nature of the injunction that Zeltiq requests poses very little if any risk to the public — it limits the public's access to alternative non-invasive procedures involving freezing fat cells.   However, for most persons the strategic reduction of fat deposits is cosmetic and non-essential compared to other life-saving or life-prolonging medical procedures.  The public interest favors injunctive relief.

*Turnover and Destruction*

Zeltiq's proposed injunction includes a provision requiring the Defendants to surrender the accused device to Zeltiq's counsel for inspection, analysis, and/or destruction. Authority for such relief is provided by 15 U.S. C. § 1118.[3] When a court has entered a permanent injunction against the defendants it may decline to enter such an order as unnecessary. *See Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc.,* 589 F. Supp. 2d 25, 33 (D.D.C. 2008). However, given the Defendants' complete failure to participate in this litigation, the Court will order the Defendants to surrender the accused device to Zeltiq for inspection, analysis and/or destruction. *See e.g., Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs., Inc.,* 13-CV-2548 KMW JLC, 2014 WL 1303434, at *7 (S.D.N.Y. Apr. 1, 2014). Therefore, the turnover and destruction provision will be included in the

---

[3] Section 1118 provides that:

> In any action arising under this chapter, in which a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) of this title, or a willful violation under section 1125(c) of this title, shall have been established, the court may order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing the registered mark or, in the case of a violation of section 1125(a) of this title or a willful violation under section 1125(c) of this title, the word, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation, or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed. The party seeking an order under this section for destruction of articles seized under section 1116(d) of this title shall give ten days' notice to the United States attorney for the judicial district in which such order is sought (unless good cause is shown for lesser notice) and such United States attorney may, if such destruction may affect evidence of an offense against the United States, seek a hearing on such destruction or participate in any hearing otherwise to be held with respect to such destruction.

15 U.S.C. § 1118.

injunction.

*Summary*

Zeltiq has demonstrated that (1) it will sustain irreparable injury for which there is no adequate remedy at law if the Defendants offer the purported "Freeze Sculpting" services and device to consumers; (2) monetary damages are inadequate to remedy the injury; (3) the harm Zeltiq will sustain without an injunction outweighs the harm the Defendants will sustain with an injunction; and (4) it is in the public interest to avoid potential confusion and possible physical injury to persons.

*Attorney Fees and Costs*

Zeltiq also seeks an award of attorney fees and costs. Section § 1117 of Title 15 of the United States Code provides in pertinent part that when "a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."

An award based on 15 U.S.C. § 1117(a), allows attorney fees to be awarded to prevailing parties in Lanham Act suits — but only in "exceptional cases." *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC,* 626 F.3d 958, 960 (7th Cir. 2010). A case "under the Lanham Act is 'exceptional,' in the sense of warranting an award of reasonable attorneys' fees to the winning party, if the losing party was the

plaintiff and was guilty of abuse of process in suing, or if the losing party was the defendant and had no defense yet persisted in the trademark infringement or false advertising for which he was being sued, in order to impose costs on his opponent." *Id*. at 963-64. The Defendants have not participated in this litigation, have not attempted to raise any defense, and have continued their infringing activity. Therefore, this is an exceptional case and attorney fees will be awarded. *See id.*

The general rules for calculating awards of attorney fees under fee-shifting statutes have been applied to awards of such fees under the Lanham Act. *See, e.g., Microsoft Corp. v. T & S Int'l. Corp.,* No. 03 C 4219, 2004 WL 407008, at *1 (N.D. Ill. Mar. 3, 2004) (awarding attorneys' fees in Lanham Act case). The starting point is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate. *See Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433-37 (1983)). If necessary, a court has the flexibility to "adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Id*. (citation omitted). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Connolly v. Nat'l Sch. Bus. Serv., Inc.,* 177 F.3d 593, 597 (7th Cir. 1999) (quoting *Bankston v. Illinois,* 60 F.3d 1249, 1256 (7th Cir. 1995)). The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed. *See Spegon v. Catholic Bishop of Chi.,*

175 F.3d 544, 550 (7th Cir. 1999). "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983) (quotation omitted). Thus, a fee request must make a good faith effort to exclude hours that are excessive, redundant, or otherwise unnecessary. *Id.* at 434.

Costs are not defined in 15 U.S.C. § 1117(a). However, this Court concurs with the observation in *Fuller v. Heintz/Candee*, 07-CV-305-BBC, 2008 WL 5423199, at *6 (W.D. Wis. Dec. 30, 2008), that this Circuit's precedent suggests that "'the costs of the action,' . . . does no more than refer to costs defined in 28 U.S.C. § 1920." (citing *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 411 (7th Cir. 1999) (holding that FLSA fee shifting provision providing for shifting of "the costs of the action" referred to costs as defined in 28 U.S.C. § 1920)).[4]

Zeltiq claims attorney fees and costs from Thompson Hine LLP (the

---

[4] Section 1920 provides that:

A judge or clerk of any court of the United States may tax as costs the following:

 (1) Fees of the clerk and marshal;

 (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

 (3) Fees and disbursements for printing and witnesses;

 (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

 (5) Docket fees under section 1923 of this title;

 (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

"Thompson firm") in the amounts of $20,263.00 and $18.77, respectively. (Suppl. Aff. ¶ 3, Ex. 2.) (ECF Nos. 21, 21-2.) It also claims legal fees and costs attributable to Gonzalez Saggio & Harlan LLP (the "Gonzalez firm") of $5,745.00 and $904.00. (Aff. Default J., ¶ 9, Ex. 1.) (ECF Nos. 22, 22-1.) Zeltiq has filed detailed statements itemizing the time spent, the expenses, and the hourly rates of the attorneys for both firms and a paralegal from the Gonzalez firm. Both firms aver that the hourly rates charged and hours expended on behalf of Zeltiq are reasonable.

The Court concludes that the hours spent in connection with the fees sought by Zeltiq are fair, reasonable, and customary for the tasks performed, and are within the market rate for similar services performed by attorneys with similar ability and experience, involving litigation under the Lanham Act in national and local markets. Therefore, the Court grants Zeltiq's request for a fee award of $26,008.00.

The total amount of costs sought is $922.77. The $18.77 in costs claimed by the Thompson firm is the price for sending documents twice by FedEx to the Gonzalez firm. (Aff. filed 7/31/13, ¶ 14, Ex. 1 at 3.) (ECF Nos. 14, 14-1.) The expense does not fall within the scope of § 1920 and, therefore, is not allowed.

The Gonzalez firm claims $904.00 in expenses. Of that amount, $422.00 was expended obtaining admission to the bar for two attorneys, and that sum will be allowed as costs. *See U. S. ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc.,* 436 F.3d 726, 730 (7th Cir. 2006) (allowing the *pro hac vice* admission of attorneys as

recoverable costs).[5] The other costs sought by the Gonzalez firm are the filing fee and service costs which are allowable under § 1920. Therefore, $904.00 in costs are allowed. Zeltiq should file a bill of costs with the Clerk of Court pursuant to Fed. R. Civ. P. 54.

*Pre-Judgment Interest*

"Prejudgment interest ensures that victims of federal law violations are fully compensated for their loss." *RK Co. v. See*, 622 F.3d 846, 853 (7th Cir. 2010). In this Circuit pre-judgment interest is recoverable in cases of trademark infringement in order to make the plaintiff whole. *See Gorenstein Enter., Inc. v. Quality Care-USA, Inc.,* 874 F.2d 431, 436 (7th Cir. 1989). "[I]n most cases prejudgment interest is an element of compensation." *Shott v. Rush-Presbyterian St. Luke's Med. Ctr.,* 338 F.3d 736, 745 (7th Cir. 2003). The Court will award pre-judgment interest.

Zeltiq has not addressed the rate of pre-judgment interest or the time from which it should run. However, the prime rate is the benchmark to be used for pre-judgment interest, unless another rate is statutorily defined. *First Nat'l Bank of Chi. v. Standard Bank & Trust,* 172 F.3d 472, 480 (7th Cir. 1999); *Gorenstein,* 874 F.2d at 437. Furthermore, as *Shott*, 338 F.3d at 746, comments "[l]awyers rarely bill their clients within days of rendering services in an ongoing suit, receive payment within

---

[5] *Kalitta Air L.L.C. v. Central Texas Airborne System Inc.,* 741 F.3d 955, 958 (9th Cir. 2013) criticized *Gear* as pre-dating the holding in *Taniguchi v. Kan Pac. Saipan, Ltd.,* 132 S.Ct. 1997, 2006 (2012), that "taxable costs are limited by statute and are modest in scope," and as not being clearly explained.

This action involves regular admission to this District's bar – *pro hac vice* admissions are not allowed in this District. *See* Gen. L.R. 83(c)(2)(E) (E.D. Wis.). Moreover, *Gear* remains controlling case law.

thirty days of that rendition, or charge interest for payment after thirty days." *Id.* (citations omitted). Thus, the pre-judgment interest should begin to accrue thirty days after Zeltiq was billed for the service. *Id.*

Accordingly, Zeltiq is entitled to pre-judgment interest on the amount of attorney fees beginning thirty days after it received the bills from its attorneys. Zeltiq must file a document indicating the date or dates it was billed for the legal services in this action, and its calculation of the appropriate amount of pre-judgment interest at the prime rate running from thirty days after receiving the bill(s) to the date of judgment. The calculation should be based on an anticipated entry of judgment on the first business day after the date Zeltiq files its document.

*Post-Judgment Interest*

Zeltiq also requests an award of post-judgment interest. The post-judgment interest rate for federal cases is fixed by 28 U.S.C. § 1961. *Gorenstein,* 874 F.2d at 436. "Civil litigants who win money judgments in district courts are entitled to post judgment interest" by statute. *See Pace Commc'ns, Inc. v. Moonlight Design, Inc.,* 31 F.3d 587, 591 (7th Cir. 1994). A judgment awarding post-judgment interest is redundant. *Id.* Therefore, the judgment will not provide for post-judgment interest.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Defendants Brown Health Relaxation Station LLC, Nouvelle Weight Loss Center, and Meredith Brown, their affiliates, officers, directors, agents, representatives, attorneys, and all persons acting or claiming to act on their behalf or under their direction or authority, and all persons acting in concert or participation therewith, are hereby **PERMANENTLY ENJOINED** from:

> (i) using the marks Zeltiq®, CoolSculpting®, Freeze Sculpting, Cryolipolysis®, or any confusingly similar mark or colorable imitation thereof in connection with the promotion, advertisement, display, sale, or distribution of any goods or services offered by any of the Defendants;
>
> (ii) performing any act, making any statement, or distributing any materials that are likely to lead members of the public to believe that any device(s) owned or services performed, distributed, leased, or sold by the Defendants are associated or connected with Zeltiq or are sold, licensed, sponsored, approved or authorized by Zeltiq;
>
> (iii) reproducing, displaying distributing, or creating derivative works from any text, graphics, photographs, videos, or other materials owned by and/or emanating from Zeltiq or its authorized providers concerning "cryolipolysis" and the results therefrom; and
>
> (iv) otherwise taking any action likely to cause public confusion, mistake, or deception as to the connection, affiliation, sponsorship, approval, or other association of Defendants' goods or services with Zeltiq or its goods or services.

**No later than June 3, 2014,** the Defendants **MUST** surrender the accused device to Zeltiq's counsel for inspection, analysis, and/or destruction.

Zeltiq is **AWARDED** against the Defendants jointly and severally, $26,008.00 in attorney fees with pre-judgment interest at the prime rate beginning thirty days from the date of billing(s) to the date of judgment, and costs in the amount of $904.00;

**No later than June 3, 2014,** Zeltiq **MUST FILE** a document indicating the date or dates it was billed for the legal services rendered in this action and calculating the amount of pre-judgment interest in a manner consistent with this decision. Such calculation should be based on the anticipated entry of judgment on the first business day after the date Zeltiq files its document.

Dated at Milwaukee, Wisconsin, this 6th day of May, 2014.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**